IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JULIE RENEE VAZQUEZ

    *Plaintiff,*

v.

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY,

    *Defendant.*

Case No. 24-2550-EFM

**MEMORANDUM AND ORDER**

Plaintiff Julie Renee Vazquez seeks review of a final decision by Defendant, the Commissioner of Social Security Administration ("Commissioner"), denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. ("the Act"). Because the administrative decision is supported by substantial evidence in the record, the Court affirms the Commissioner's denial of benefits.

**I.    Factual and Procedural Background**

Plaintiff is a 51-year-old woman who suffers from various physical and mental impairments. She alleges the onset date of her disability was February 25, 2017.

Since December 7, 2017, Plaintiff has unsuccessfully sought Social Security disability benefits. In May 2018, the Social Security Administration denied her initial request. Plaintiff sought reconsideration, but that request was denied. In December 2019, an Administrative Law Judge ("ALJ") issued Plaintiff an unfavorable decision, denying her disability claim. A series of errors by the Commissioner has caused Plaintiff's claim to bounce around the administrative system for years. This included two appeals to the Social Security Appeals Council, two reviews

by this Court, and three more unfavorable decisions by an ALJ. Plaintiff now seeks review of the most recent unfavorable decision by an ALJ.

In September 2024, the ALJ determined that Plaintiff was not disabled. The ALJ arrived at this conclusion after going through the five-step evaluation process. First, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of her disability. Second, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, sciatica, degenerative joint disease and osteoarthritis of the bilateral knees, mild axonal peripheral neuropathy, coronary artery disease that required a stent placement, fibromyalgia, left carpal tunnel release, asthma, obstructive sleep apnea, obesity, major depressive disorder, and anxiety disorder. However, the ALJ determined that none of these impairments (nor the combination thereof) met the listed impairments described by the relevant regulation.[1] Finding that Plaintiff did not suffer from a severe listed impairment, the ALJ went on to determine Plaintiff's Residual Functional Capacity ("RFC").

To determine Plaintiff's RFC, the ALJ considered the recorded medical evidence, which included opinions from several physicians and psychologists, and Plaintiff's testimony. Ultimately, the ALJ determined that Plaintiff

> had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she requires the option to stand for 10 minutes after every one hour of sitting as long as she is not off task or away from the workstation. She cannot climb ladders, ropes, or scaffolds or crawl. She can occasionally climb ramps and stairs. She can occasionally stoop, kneel, and crouch. She cannot work at unprotected heights or around dangerous machinery or moving mechanical parts. She can occasionally push/pull with the right lower extremity. She can occasionally perform operation of hand controls with the non-dominant left hand and can frequently handle and finger with the non-dominant left hand. She can tolerate occasional exposure to extreme cold/heat, humidity, strong odors, gases, and poor

---

[1] *See generally* 20 C.F.R. Pt. 404, Subpt. P, App'x. 1.

ventilation. She can have occasional exposure to vibration. She would be absent 1 day per month on consistent including the need to leave early or arrive late. She would be off task 10% of the time during an 8-hour workday due to symptoms of pain. She can perform simple, routine, repetitive tasks in a work environment free of fast paced production requirements, e.g. assembly line work or hourly quotas. She can tolerate few changes in a routine work setting. She can have no interaction with the public and frequent interaction with co-workers and supervisors.[2]

After determining Plaintiff's RFC, the ALJ determined that Plaintiff had no past relevant work. At an administrative hearing, the ALJ posed a hypothetical question to a Vocational Expert ("VE") in which the ALJ informed the VE of Plaintiff's RFC and asked whether jobs existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. The VE testified affirmatively and listed the following three jobs with an estimate of how many existed in the national economy: Final Assembler (24,000 jobs), Wire Patcher (34,000 jobs), and Lens Inserter (22,000 jobs). Based upon the VE's testimony, the ALJ determined that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" and that a finding of "not disabled" was appropriate.

Plaintiff seeks review of this determination. She alleges that the ALJ erred by not applying the correct legal standards and because the ALJ's decisions were not supported by substantial evidence. Ultimately, Plaintiff requests this Court reverse the ALJ's decision and direct the Commissioner to grant Plaintiff disability insurance benefits because of the prolonged nature of this case. In the alternative, Plaintiff requests the Court remand to the Commissioner for additional proceedings. The Commissioner opposes Plaintiff's request, asking the Court to affirm his decision. The matter is ripe for the Court's ruling.

---

[2] Admin. R. at 3023–24.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[3] The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[4] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[5] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[6]

An individual is disabled under the Act only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[7] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[8] The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[9] The steps are designed to be followed in order. If it is determined, at any step of the

---

[3] 42 U.S.C. § 405(g).

[4] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[5] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[6] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[7] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[8] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[9] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[10]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[11] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[12]

After assessing the claimant's RFC, the ALJ continues to steps four and five. Step four requires the ALJ to determine whether the claimant can perform her past relevant work. If not, the ALJ proceeds to step five which asks whether she can generally perform other work that exists in the national economy.[13] The claimant bears the burden in steps one through four to prove a disability that prevents the performance of her past relevant work.[14] The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[15]

---

[10] *Barkley*, 2010 WL 3001753, at *2.

[11] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[12] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[13] *Barkley*, 2010 WL 3001753,. at *2 (citing *Williams*, 844 F.2d at 751).

[14] *Lax*, 489 F.3d at 1084.

[15] *Id.*

### III.    Analysis

Plaintiff raises several arguments in support of her challenge to the Commissioner's decision. First, she asserts that the ALJ did not adequately account for the medical source opinions regarding Plaintiff's mental functional limitations in the RFC. Next, she contends that the ALJ did not sufficiently explain why she rejected some portions of the medical source opinions. Third, she asserts that the RFC's physical functional limitations are not supported by substantial evidence. Finally, Plaintiff challenges the reliability of the VE's opinion about the number of jobs available in the national economy. The Court addresses each argument in turn.

**A.    Plaintiff's RFC as to her Mental Functional Limitations**

Plaintiff challenges the ALJ's determination related to her mental functional limitations as not supported by substantial evidence. Plaintiff takes issue with how the ALJ incorporated the findings of several psychologists who opined as to Plaintiff's mental functional limitations. The medical sources that Plaintiff highlights are: Dr. Linda Skolnick, a non-examining, non-treating psychologist who issued an opinion in May 2018; Dr. Lon Olson, a non-examining and non-treating psychologist who issued an opinion in June 2018 that was identical to Dr. Olson's; Dr. Richard Kaspar, a non-examining, non-treating psychologist who issued an opinion in September 2022; and Dr. Mark Altomari, a non-examining, non-treating psychologist who issued an opinion in November 2022. Plaintiff asserts that the ALJ did not adequately consider the various opinions of these psychologists related to Plaintiff's ability to (1) carry out instructions; (2) respond appropriately to change; (3) maintain attention and concentration for extended periods; and (4) complete a normal workday. The Court takes up the ALJ's consideration of each identified mental functional limitation in turn.

### 1. Plaintiff's Ability to Carry Out Instructions

Plaintiff asserts that the ALJ erred by not limiting Plaintiff to short and simple instructions in the RFC or explaining why this limitation was omitted. Plaintiff points out that Dr. Skolnick and Dr. Olson opined that Plaintiff was moderately limited in the ability to carry out detailed instructions and would have difficulty completing detailed tasks. Dr. Altomari also opined that Plaintiff was moderately limited in her ability to carry out detailed instructions and was limited to short and simple instructions. The ALJ found these portions of these medical sources' opinions persuasive. However, the RFC does not expressly include a limitation as to Plaintiff's ability to carry out instructions.

Plaintiff contends that this omission amounts to a conflict the ALJ was required to explain.[16] Plaintiff cites *Haga v. Astrue*[17] for support. There, in relevant part here, the RFC limited the claimant to "simple, repetitive tasks."[18] The Tenth Circuit reversed and remanded the ALJ's finding with regard to the RFC because "the ALJ should have explained why he rejected four of the moderate restrictions on [the medical source's] RFC assessment while appearing to adopt others."[19] But the Tenth Circuit recognized that this RFC limitation—"simple, repetitive tasks"— adequately reflected the medical source's opinion that the claimant was unable to "carry out detailed instructions."[20]

---

[16] *See* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

[17] 482 F.3d 1205 (10th Cir. 2007).

[18] *Id.* at 1207.

[19] *Id.* at 1208.

[20] *Id.*

Similarly, here, Drs. Skolnick, Olson, and Altomari opined that Plaintiff is limited in her ability to "carry out detailed instructions." And Plaintiff's RFC limits Plaintiff to "simple, routine, and repetitive tasks." Further, the ALJ expressly discussed Plaintiff's ability to carry out instructions in her recitation of Drs. Skolnick, Olson, and Altomari's opinions. The ALJ went on to acknowledge that the RFC is meant to "express the moderate limitations arising out of [Plaintiff's] mental impairments."[21] This language, coupled with the ALJ's express discussion of the moderate limitations identified by Drs. Skolnick, Olson, and Altomari, evinces that the ALJ's RFC adequately considered the medical opinions that Plaintiff should be limited to short and simple instructions.

Accordingly, as in *Haga*, this RFC limitation does not conflict with Plaintiff's moderate limitation to short and simple instructions. As such, the Court need not address the parties' further arguments on this matter.

### 2. *Plaintiff's Ability to Respond Appropriately to Change*

Plaintiff next asserts that the RFC is unsupported by substantial evidence because it does not fully account for Plaintiff's ability to respond appropriately to changes in the workplace. Drs. Skolnick and Olson opined that Plaintiff "is capable of adapting to changes in the workplace that are predictable and introduced gradually but would not be able to adjust to intense and/or abrupt variations in routine." Dr. Altomari opined that Plaintiff "can adapt to most changes in the work place." The ALJ found these opinions persuasive, and the RFC reflects that Plaintiff "can tolerate few changes in a routine work setting."

Plaintiff acknowledges that the RFC quantitively addresses her ability to adapt to changes in the workplace. But she argues that the RFC should also address the *quality* and *predictability* of

---

[21] Admin. R. at 3034.

those changes. However, Plaintiff cites no caselaw that draws a distinction between the quality and quantity of changes in the workplace. Here, the RFC limits Plaintiff to few changes in the workplace and a routine setting. And, although the RFC does not contain a verbatim recitation of the medical sources' opinions, the RFC is not in conflict with them. Rather, the Court finds that the RFC is supported by substantial evidence—namely the medical opinions of Drs. Skolnick, Olson, and Altomari—regarding Plaintiff's ability to respond appropriately to change in the workplace.

### 3. *Plaintiff's Ability to Maintain Attention and Concentration for Extended Periods*

Plaintiff argues that the ALJ's RFC determination is unsupported because it does not account for Plaintiff's moderate limitation in maintaining attention and concentration for extended periods. Drs. Skolnick and Olson opined that Plaintiff "can retain concentration and persistence with simple tasks." Dr. Kaspar opined that Plaintiff "is estimated to have moderate impairment to concentrate, persist and maintain pace." The ALJ found these opinions persuasive. However, the RFC does not specifically mention Plaintiff's ability to maintain attention and concentration for extended periods.

The Commissioner argues that the RFC accounts for this specific limitation by limiting Plaintiff to simple, routine, and repetitive tasks. The Commissioner cites *Smith v. Colvin*[22] for the proposition that an RFC that limits a Plaintiff to simple, repetitive, and routine tasks can account for a moderate limitation in a claimant's ability to maintain concentration. There, the claimant was moderately limited in his ability to "remain attentive and keep concertation for extended periods" and the RFC limited the claimant to "simple, repetitive, and routine tasks."[23] The Tenth Circuit

---

[22] 821 F.3d 1264 (10th Cir. 2016).

[23] *Id.* at 1268–69.

found it "acceptable" for an ALJ to "account for moderate limitations by limiting the claimant to particular kinds of work activity."[24]

Here, the medical source opinions and the RFC are nearly identical to those in *Smith*. Further, the ALJ expressly described this moderate limitation in her discussion of the medical opinions and explained that her RFC assessment was conducted "in light of the overall medical evidence showing improvement in the claimant's psychological based symptoms, with conservative treatment, normal mental status exams, and the claimant's reported daily activities."[25] As in *Smith*, the Court is satisfied that "[t]hrough these findings, the [ALJ] incorporated the functional limitations of [Plaintiff]'s moderate nonexertional impairments."[26]

### 4.  *Plaintiff's Ability to Complete a Normal Workday*

Finally, Plaintiff asserts that the RFC does not account for her ability to complete a normal workday without interruptions from psychologically based symptoms. Dr. Kaspar noted that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[27] The ALJ found this opinion persuasive. The RFC notes that Plaintiff "would be off task 10% of the time during an 8-hour workday" but attributes this to Plaintiff's "symptoms of pain," not psychological symptoms.

Plaintiff argues that the ALJ's finding that she would be off task 10% of the workday is expressly tied to "symptoms of pain." As such, Plaintiff contends the RFC does not account for

---

[24] *Id.* at 1269.

[25] Admin. R. at 3033.

[26] *Smith*, 821 F.3d at 1269.

[27] Admin. R. at 3103–04.

Dr. Kaspar's opinion that she is moderately limited in her ability to complete a normal workday due to *psychological* symptoms. However, Plaintiff cites no caselaw for this position. But the Commissioner again cites *Smith v. Colvin*.[28] There, the claimant was also moderately limited in his ability to "complete a normal workday and workweek without interruption for psychologically base symptoms."[29]

Recall that the RFC at question in *Smith* limited the claimant to "simple, repetitive, and routine tasks."[30] Here, the same moderate limitation resulted in a nearly identical RFC. As such, the Court finds the RFC sufficiently embraces the limitation related to Plaintiff's ability to complete a normal workday.

**B.     The ALJ's Requirements under 20 C.F.R. § 404.1520c**

Next, Plaintiff argues that in finding a portion of Drs. Skolnick, Olson, and Altomari's medical opinions unpersuasive, the ALJ failed to address the supportability of their opinions as required by 20 C.F.R. § 404.1520c.

That provision lists several factors that an ALJ must consider in determining the persuasiveness of a medical opinion.[31] The most important factors are supportability and consistency.[32] The regulation provides that an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions."[33] The supportability factor is defined as "[t]he more relevant the objective medical evidence and

---

[28] 821 F.3d 1264 (10th Cir. 2016).

[29] *Id.* at 1268–69.

[30] *Id.*

[31] 20 C.F.R. §§ 404.1520c(c)(1)-(5).

[32] 20 C.F.R. § 404.1520c(b)(2).

[33] *Id.*

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."[34] A supportability discussion "could include, for example, whether [the medical source's] treatment notes supported her opinion, the check-the-box format of her opinion, whether [the medical source] examined plaintiff, and whether [the medical source] explained how or why she reached her opinion."[35]

Plaintiff takes specific issue with the ALJ's finding that the portions of Drs. Skolnick, Olson, and Altomari's medical opinions were unpersuasive regarding Plaintiff's ability to interact with coworkers and supervisors. The ALJ explained in relevant part:

> To the extent [Drs. Skolnick and Olson] opine the claimant could not frequently interact with coworkers and supervisors, their opinions are not supported by the evidence and are contrary to exams showing that the claimant demonstrated appropriate behavior and appeared competent; had clear though processes, appropriate thought content, and normal perceptions; was noted to be smiling and laughing at times during the examination; was polite and cooperative throughout the exam, and had good eye contact.[36]

The ALJ had a nearly identical explanation for why she found Dr. Altomari's opinion on this issue unpersuasive.

Plaintiff asserts that the ALJ's explanation only addresses the consistency of the medical sources' opinions with other evidence. But a review of the "additional explanation" in Drs. Skolnick's, Olson's, and Altomari's reports documenting their psychiatric review technique demonstrates that these medical sources' opinions were informed by their review of exam notes

---

[34] 20 C.F.R. § 404.1520c(c)(2).

[35] *S.P. v. Kijakazi*, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022).

[36] Admin. R. at 3034.

-12-

from Plaintiff's treatment by other providers.[37] Because the medical source opinions expressly rely upon exam notes from other providers, the ALJ's supportability discussion necessarily overlaps with the consistency discussion. As such, the Court finds that the ALJ sufficiently addressed the supportability factor as required by 20 C.F.R. § 404.1520c.

**C.     Plaintiff's RFC as to her Physical Functional Limitations**

Plaintiff continues her challenge by making two broad arguments against the ALJ's determination of her physical functional limitations in the RFC. First, she contests the ALJ's reliance on certain medical sources to inform the RFC determination. Second, she identifies several specific aspects of the physical limitations in the RFC that she asserts are not supported by substantial evidence. The Court addresses these arguments in turn.

*1.     The ALJ's Reliance on Drs. Daly and O'Day's Opinions*

Plaintiff first argues that the ALJ's reliance upon Drs. Daly and O'Day's opinions to inform her assessment of Plaintiff's physical functional limitations was improper. Dr. Chystalla Daly and Dr. Michael O'Day were non-examining, non-treating physicians who provided identical opinions regarding Plaintiff's physical limitations in 2018. They opined that Plaintiff could:

> occasionally lift, carry, push, and pull 10 pounds; frequently lift, carry, push, and pull 10 pounds; stand or walk 2 hours; sit about 6 hours in an 8-hour day; frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, dusts, odors, gases, and poor ventilation; and avoid even moderate exposure to hazards such as dangerous machinery and unprotected heights.[38]

---

[37] *See* Admin. R. at 112–13, 133–34, 3117–18.

[38] Admin. R. at 3033.

The ALJ found Drs. Daly and Dr. O'Day's opinions partially persuasive. Even though the ALJ only found their opinions partially persuasive, the RFC, in large part, reflects and incorporates their assessments.

Plaintiff argues that because the ALJ found these opinions to be only partially persuasive, they cannot constitute "substantial evidence" to support the RFC. Plaintiff cites *Coleman v. Astrue*[39] for this proposition. But the circumstances in that case are distinct from the circumstances here. There, the ALJ rejected the treating physician's opinion and, because there were no other treating or examining physician's opinions from which the ALJ could ascertain the claimant's RFC, the court held that the ALJ "was not free to simply choose whatever limitations he wanted with none but the barest relation to the record evidence."[40]

Here, the ALJ's RFC is informed by the portions of Drs. Daly and O'Day's opinions that the ALJ found persuasive. And where the RFC differs, the ALJ found further limitation was necessary after reviewing other medical evidence. The Commissioner responds by drawing a parallel between the ALJ's actions here and the Tenth Circuit's holding in *Chapo v. Astrue*.[41] There, the ALJ rejected one medical opinion, accorded weight to another, and then tempered the opinion "in the claimant's favor."[42] The Tenth Circuit found "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."[43] Here, the ALJ found Drs. Daly and

---

[39] 523 F. Supp. 2d 1264 (D. Kan. 2007).

[40] *Id.* at 1275.

[41] 682 F.3d 1285 (10th Cir. 2012).

[42] *Id.* at 1288 (emphasis omitted).

[43] *Id.*

O'Day's opinions persuasive, reviewed medical evidence that supported additional limitations, and determined Plaintiff's RFC required additional limitation. This is not error.[44]

Next, Plaintiff argues that Drs. Daly and O'Day's opinions are stale and not informed by the vast majority of the medical evidence. Plaintiff asserts that Drs. Daly and O'Day issued their opinions early in the process of Plaintiff's request for disability benefits, and therefore they did not have the benefit of reviewing imaging studies and other medical records generated after that date. Indeed, most of the medical records—including several imaging studies and records from hospital visits—are postdated from Drs. Daly and O'Day's initial opinions. However, Plaintiff overlooks that Dr. O'Day rendered another opinion on November 29, 2022—which was nearly identical to his opinion in 2018, even after taking account of the imaging studies and other medical evidence.[45] The ALJ cites to Dr. O'Day's subsequent opinion in determining that another medical source's opinion was unpersuasive, indicating that she was aware of and had reviewed Dr. O'Day's subsequent opinion.[46] As such, Plaintiff's argument that the ALJ relied on stale medical sources is not informed by the record.

>    2.    *Plaintiff's Specific Concerns with the Physical Limitation in the RFC*

Plaintiff argues that other aspects of the RFC describing her physical functional limitations are not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ's determination as to her physical functional limitations related to the use of her left hand, the use of her right lower extremity, her symptoms of fibromyalgia, and the sit/stand option included in

---

[44] *Id.* at 1288–89 ("We have thus rejected the argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." (internal alterations and citation omitted)).

[45] *See* Admin. R. at 3119–21.

[46] *Id.* at 3035.

the RFC are unsupported. In large part, Plaintiff's arguments related to her physical limitations asks this Court to reweigh the ALJ's factual conclusions. But in considering Plaintiff's arguments here, the Court is mindful that it cannot reweigh the evidence or substitute its own judgment for that of the agency.[47] Further, the Court is aware that the ALJ is entitled to "particular deference" because "she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion."[48]

First, Plaintiff takes issue with the RFC's limitation that Plaintiff can "occasionally perform operation of hand controls with the non-dominant left hand and can frequently handle and finger with the non-dominant left hand." Plaintiff argues that the ALJ did not sufficiently explain how she arrived at this conclusion. But the ALJ cited to the medical evidence in which Plaintiff had left carpal tunnel surgery, and Plaintiff's reports that she was doing well after the surgery and that her "preoperative symptoms were resolving."[49] Taking account of the surgery and Plaintiff's reported progress, the ALJ concluded that "due to left carpal tunnel syndrome [Plaintiff] can only occasionally operate hand control and frequently handle/finger."[50] Unlike the cases Plaintiff cites in support of her position, this is not a case where "the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination."[51] The evidence the ALJ cited and the explanation for the limitation supports the conclusion that the RFC should reflect additional limitations over and above what the medical sources opined.

---

[47] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

[48] *Id.* at 910.

[49] Admin. R. at 3029.

[50] *Id.* at 3031.

[51] *Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1299 (D. Kan. 2007).

Plaintiff makes a similar argument regarding the RFC's limitation that Plaintiff can occasionally push and pull with her right lower extremity. She takes issue with the fact that the ALJ found that she had severe impairments in both knees, but the RFC only limited the use of Plaintiff's right lower extremity. But the ALJ sufficiently connected this limitation to the medical evidence by stating that Plaintiff "had some medial and lateral knee tenderness and decreased *right knee* range of motion due to pain" but otherwise had "normal muscle strength" and good range of motion in her joints."[52] The ALJ explained that the limitation to "only occasional pushing/pulling with the right lower extremity" accommodated this impairment.[53] The Court finds that this is a sufficient "link" to the "RFC determination [and] specific evidence in the record."[54]

Next, Plaintiff takes issue with how the ALJ reconciled Plaintiff's reported symptoms of fibromyalgia and other evidence in the record. The ALJ acknowledged that Plaintiff had a severe impairment of fibromyalgia but ultimately rejected Plaintiff's allegation of disability based upon this condition. The ALJ sufficiently cited to medical evidence to support her conclusion,[55] and considered her other activities[56] in rejecting Plaintiff's claim of disability for this condition. Because the ALJ is entitled to "particular deference"[57] in these determinations, the Court finds that her conclusions are supported by substantial evidence.

---

[52] Admin. R. at 3026.

[53] *Id.* at 3031.

[54] *Tracy*, 518 F. Supp. 2d at 1299.

[55] Admin. R. at 3029 (noting that Plaintiff had "normal muscle strength and normal range of motion during most examinations," and on many occasions "had a normal gait").

[56] *Id.* at 3032 (noting that Plaintiff "had taken care of two grandchildren all summer and was doing more cleaning in order to be productive").

[57] *White*, 287 F.3d at 910.

Finally, Plaintiff contends that the RFC's limitation that Plaintiff have the option to stand for 10 minutes after every hour of sitting provided she would not be off task or away from the workstation is not supported or explained. But the ALJ noted Plaintiff reported that she can stand for 30–45 minutes and then needs to lean forward,[58] further she testified that she can only sit for 20 minutes.[59] After the ALJ reviewed the medical evidence, she found that "the overall medical evidence of record does not fully support [Plaintiff's] allegations of ongoing severe and disabling symptoms regarding her physical impairments."[60] Then the ALJ "considered all the combined effect of the claimant's impairments" to arrive at the conclusion that Plaintiff "need[ed] the option to sit for ten minutes after every one hour of standing."[61] The Court finds that the ALJ sufficiently explained and "connect[ed] the dots" in arriving at this conclusion.[62]

In sum, the Court finds that the physical limitations described in the RFC are supported by substantial evidence.

**D.     The Commissioner's Burden at Step Five**

Lastly, Plaintiff contends that the ALJ should not have accepted the VE's estimate of the number of jobs available in the national economy because the VE's opinion is unreliable. Recall that step five asks whether the claimant can generally perform other work that exists in the national economy[63] and that the Commissioner bears the burden at this step.[64]

---

[58] Admin. R. at 3024.

[59] *Id.* at 3025.

[60] *Id.* at 3030.

[61] *Id.* at 3031.

[62] *Kency v. Barnhart*, 2004 WL 5542829, at *4 (D. Kan. Nov. 16, 2004).

[63] *Barkley*, 2010 WL 3001753, at *2.

[64] *Lax*, 489 F.3d at 1084.

Here, the ALJ posed a hypothetical question to the VE regarding the jobs available based upon Plaintiff's age, education, past relevant work experience, and RFC. The VE testified in response that a person similarly situated to Plaintiff could perform the following jobs available in the national economy: Final Assemble (24,500 jobs), Wire Patcher (34,400 jobs), and Lens Inserter (22,500 jobs). Plaintiff sought to rebut this evidence by submitting evidence that there were only 66 Final Assembler jobs, 85 Wire Patcher jobs, and 66 Lens Inserter jobs in the national economy. The ALJ then sent Plaintiff's rebuttal evidence to the VE along with an interrogatory for the VE to identify the sources and methodology informing her opinion.[65] The VE reviewed Plaintiff's assertions and maintained her opinion.[66] Plaintiff contends that the ALJ could not have relied on the VE's testimony because her response was vague as to the methodology she used to arrive at her estimation of the number of jobs existing in the national economy. Further, Plaintiff asserts that because the sources cited by the VE are vague, Plaintiff cannot identify the data supporting the VE's testimony.

But the Supreme Court has held that, even when a VE refuses to provide the source of their underlying data, their opinions may still constitute substantial evidence to support an ALJ's decision.[67] Here, the ALJ stated that the VE's professional experience supported the reliability of her opinion and cited Social Security Ruling 00-4p for the proposition that this was a proper factor upon which the ALJ could resolve conflicting evidence.[68] Indeed, data developed from a VE's

---

[65] Admin. R. at 3434.

[66] *Id.* at 3434.

[67] *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019).

[68] SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, *or from a VE's or VS's experience in job placement or career counseling*." (emphasis added)).

experience is often invoked as a proper source to support that VE's opinion.[69] Because the ALJ relied upon a proper source to resolve the conflicting evidence, the Court finds that the ALJ did not error in her determination.

For the reasons explained above, the Court finds that the ALJ applied the correct legal standards and that her determinations are supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 22nd day of December, 2025.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[69] *Biestek*, 587 U.S. at 100 ("When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" (citation omitted)).